IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| **CHRISTOPHER LEE JOYNER,** ) | |
| ) | |
| Plaintiff, ) | Case No. 7:15CV00526 |
| ) | |
| v. ) | **OPINION AND ORDER** |
| ) | |
| **M. BYINGTON, ET AL.,** ) | By: James P. Jones |
| ) | United States District Judge |
| Defendants. ) | |

*Christopher Lee Joyner, Pro Se Plaintiff; Margaret Hoehl O'Shea, Office of the Attorney General, Richmond, Virginia, for Defendants Byington, Kirby, Sattlefield, and Coleman; and Rosalie Pemberton Fessier, Timberlake Smith Thomas & Moses PC, Staunton, Virginia, for Defendant Holbrook.*

The plaintiff, Christopher Lee Joyner, an inmate proceeding pro se, filed this civil rights action under 42 U.S.C. § 1983, alleging that the defendant prison officials used or failed to prevent the use of excessive force against him and that the defendant prison nurse thereafter denied him medical care. After review of the record, I conclude that the nurse's Motion for Summary Judgment must be granted, but that Joyner's claims of excessive force and bystander liability must be tried before a jury.

I.

At the time his claims arose, Joyner was confined at Wallens Ridge State Prison ("Wallens Ridge") in Big Stone Gap, Virginia.[1] On May 5, 2015, Officers M. Byington and J. Kirby escorted Joyner, in handcuffs and shackles, from his top tier cell toward the showers.[2] When Joyner turned his head, allegedly to greet Kirby, Byington told Joyner, "You better keep your head straight or I'm going to slam you down real hard." (Compl. ¶ 11, ECF No. 1.) Joyner allegedly replied, "You are not going to do nothing to me." (*Id.* at ¶ 12.) Byington then refused to take Joyner to the shower, and the officers escorted him back to his cell and ordered him to kneel. As Joyner was attempting to do so, Byington suddenly slammed him to the floor and began punching him in the face. Kirby ran into the cell and punched Joyner "in his private area." (*Id.* at ¶ 15)

After this commotion began, Officers E. Sattlefield and J. Coleman ran upstairs to Joyner's cell and stood outside the cell, watching as Byington and Kirby punched Joyner in the face and genitals. Byington then flipped Joyner on his stomach, "tightened the handcuff that was already secure on [Joyner's] left wrist [and] bent [his] middle and index finger[s] back, while attempting to force [his] hands to the middle of his back which caused . . . Joyner to scream." (*Id.* at ¶ 18)

---

[1] Joyner is currently confined at a state prison facility in Menard, Illinois.

[2] I summarize the facts, taken in the light most favorable to Joyner, based on Joyner's verified Complaint and affidavits and the defendants' affidavits.

An officer with a handheld camcorder filmed the events following. This camcorder footage shows Joyner standing upright in his cell in restraints for several minutes, then sitting on his bed. Twice he can be seen wiping his mouth against his white T-shirt, leaving no obvious blood stain. At one point, Joyner can be seen leaning over to spit into the toilet. Two officers then escort Joyner down the stairs, and he is seated at a table in the pod area. Nurse Donna Holbrook can be seen talking to Joyner, looking at his face and into his mouth, and taking his vital signs. She rotates her own wrist and then looks at Joyner's wrist.

Joyner allegedly told Holbrook that he had been assaulted, that a cut on his lip might require stitches, that his left wrist hurt, and that three of his fingers were numb. Holbrook allegedly asked if he could move his hand, and Joyner replied, "A li'l bit." (*Id.* at ¶ 21.) Holbrook then allegedly said, "Well if you can move it, its [sic] not broke and it aint nothing I can do." (*Id.*)

In her medical notes from this examination of Joyner, Holbrook reported seeing "some dried blood on his bottom lip." (Holbrook Aff. ¶ 3, ECF No. 36-1.) She also noted seeing "two small red areas on his inner bottom lip with no active bleeding at that time," and she observed "a small red area in the middle of his forehead with no hematoma noted." (*Id.*) Holbrook reported that she "had him rotate his wrist while in cuffs" and observed that he had "good range of motion."

(*Id.*)  She further noted that his vital signs were "BP136/84, HR 106, oxygen saturations were at 93%."  (*Id.*)

Holbrook states that when she examined Joyner on May 5, 2015, "he did not appear to [her] to require emergent or urgent care.  He was not actively bleeding.  There was no swelling on his head.  He had good range of motion in his wrist." (*Id.* at ¶ 4.)  She also states that based on her "nursing judgment, he did not require further immediate medical attention."  (*Id.*)  She advised him to contact medical staff to seek follow-up care in the event his condition worsened.  A photograph of Joyner's face after the incident shows a small reddish area on the left side of his forehead and a deeper red area on his lower lip.  No blood is visible on his face or shirt. (Photo, ECF No. 47.)[3]

Joyner's medical records reflect that he was seen in the prison's medical unit on May 7, 2015, for complaints of wrist pain and "numbness and tingling" in three fingers on his left hand.  (Holbrook's Mem. Supp. Summ. J., Ex. A at 18, ECF No.

---

[3] The defendants have stated that the photograph provided is the only one taken of Joyner on May 5, 2015.  Joyner contends that surveillance video footage will show an officer with a silver digital camera taking other photographs of his face while Holbrook was examining him.  He moves the court to order this video footage to prove that the defendants are misleading the court.  Joyner asserts that the additional photographs will show that "Holbrook knew of the plaintiff's injuries and chose not to treat him." (Mot. for Court Order 1, ECF No. 50.)  I will deny this motion as conclusively contradicted by the undisputed video footage in the record.  *See Scott v. Harris*, 550 U.S. 372, 380 (2007) (holding that where record contains unchallenged videotape of events, court must only credit plaintiff's version of the facts to extent it is not contradicted by the videotape).  In the available video, an officer is seen holding a small silver camera, but he merely stands by, observing the nurse's activities.  Only after the nurse concludes her exam does this officer step forward to take a close-up photograph of Joyner's face.

36-1.) Staff noted on that occasion that he had good range of motion in the affected wrist and fingers, that his radial pulse was strong and his nail beds were pink, and that he had no swelling, bruising, or observable distress. They provided Joyner with ibuprofen for five days and referred him for placement on the sick call list.

On May 6, Joyner filed prison complaint forms against the officers' alleged use of force and failure to intervene. On May 10, Byington allegedly gave Joyner an empty lunch tray and said, "You will never eat as long as you are here if you don't withdraw them informal complaints." (Compl. ¶ 25, ECF No. 1.) That same day, Sattlefield allegedly gave Joyner an empty dinner tray and said, "You are doing this to yourself." (*Id.* at ¶ 27)

On May 11, 2015, Joyner was transferred to Red Onion State Prison ("Red Onion"). His medical records reflect that at the time of the transfer, he was taking ibuprofen, and although he complained of pain in two fingers on his left hand, no swelling or redness was noted. On May 29, 2015, an X-ray of Joyner's left wrist indicated "no fracture or dislocation, and no acute osseous or joint space abnormality." (Holbrook Aff. ¶ 5, ECF No. 36-1.)

In October 2015, Joyner filed this § 1983 action against Byington, Kirby, Sattlefield, Coleman, and Holbrook, seeking monetary damages. He alleges claims of excessive force, failure to intervene, retaliation, and deliberate indifference to

-5-

serious medical needs. Holbrook filed a Motion for Summary Judgment, supported by her affidavit, medical records, and the video footage already described. The other defendants filed a Motion for Summary Judgment and supporting affidavits. Joyner has responded to the motions, making them ripe for consideration.

II.

A. Standard of Review.

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (U.S. 2014) (per curiam). The court does not weigh evidence, consider credibility, or resolve disputed issues; it decides only whether the record reveals a genuine dispute over material facts. *Tolan*, 134 S. Ct. at 1866. Facts are material when they "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute exists if "a reasonable jury could return a verdict in favor of the nonmoving party." *Kolon Indus., Inc. v. E.I. DuPont de Nemours & Co.*, 748 F.3d 160, 173 (4th Cir. 2014) (citing *Anderson*, 477 U.S. at 248).

B.  Use of Excessive Force.

Section 1983 permits an aggrieved party to file a civil action against a person for actions taken under color of state law that violated the aggrieved party's constitutional rights.  *Cooper v. Sheehan*, 735 F.3d 153, 158 (4th Cir. 2013).  Joyner's claims of excessive force arise under the Eighth Amendment, which protects prisoners from the "unnecessary and wanton infliction of pain."  *Whitley v. Albers*, 475 U.S. 312, 319 (1986) (quoting *Ingraham v. Wright*, 430 U.S. 651, 670 (1977)), *abrogated on other grounds by Wilkins v. Gaddy*, 559 U.S. 34 (2010).  An Eighth Amendment claim for excessive force, like Joyner's claim, requires the prisoner to prove two things: that the official possessed a sufficiently culpable state of mind (subjective component), and that the official caused the prisoner to suffer a sufficiently serious deprivation or injury (objective component).  *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996).

To satisfy the subjective component, the prisoner must prove that, subjectively, the official acted "maliciously and sadistically for the very purpose of causing harm" rather than "in a good faith effort to maintain or restore discipline." *Whitley*, 475 U.S. at 320-21 (internal quotation marks omitted).  Not every malevolent touch by a prison guard gives rise to an excessive force claim.  *Hudson v. McMillian*, 503 U.S. 1, 9 (1992).  Factors relevant to a determination of whether the official acted with malicious or sadistic intent include (1) the need for force, (2)

-7-

Case 7:15-cv-00526-JPJ-RSB   Document 53   Filed 11/30/16   Page 7 of 14   Pageid#: 252

the degree of force used in relation to the need for force, (3) the existence of a threat reasonably perceived by the official, (4) any efforts made to lessen the severity of a forceful response, and (5) the extent of the prisoner's injury. *Id.* at 7.

The objective component of an Eighth Amendment claim measures the force used against "contemporary standards of decency." *Id.* at 8 (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). When a prisoner forecasts evidence satisfying the subjective component of the constitutional claim — that the defendants "maliciously and sadistically use[d] force to cause harm" — "contemporary standards of decency always are violated." *Id.* at 9.

Byington and Kirby state that Joyner refused to comply with several orders to kneel for removal of his restraints and that he was yelling profanities and making threatening statements. They state that Byington used an approved control technique to place Joyner on the floor, where Joyner continued to struggle and began hitting his head on the floor. Byington and Kirby deny punching Joyner and contend that they used force only in a good faith effort to regain control and prevent him from harming himself. On this evidence, the officers argue that they are entitled to summary judgment.

I cannot agree. Taking the evidence as a whole in the light most favorable to Joyner, I find that he may be able to persuade a jury that he did not become verbally disruptive or fail to comply with orders and that Byington and Kirby used

-8-

force against him for the purpose of causing pain and injury. Because Joyner thus presents genuine issues of material factual dispute,[4] I must deny summary judgment as to Joyner's claims against Byington and Kirby in their individual capacities for use of excessive force.[5]

### C. Failure to Intervene.

Officers Sattlefield and Coleman, although they did not personally use force against Joyner during the May 5, 2015, incident, may yet face § 1983 liability as bystanders who failed to prevent others from violating his rights.

> The concept of bystander liability is premised on a law officer's duty to uphold the law and protect the public from illegal acts, regardless of who commits them. . . . Therefore, if a bystanding officer (1) is confronted with a fellow officer's illegal act, (2) possesses the power to prevent it, and (3) chooses not to act, he may be deemed an accomplice and treated accordingly.

*Randall v. Prince George's Cty.,* 302 F.3d 188, 203 (4th Cir. 2002).

In response to the defendants' evidence, Joyner presents his affidavit, which states that after Sattlefield and Coleman arrived at his cell, Byington resumed

---

[4] These material factual disputes also preclude the defendants' argument that they are entitled to summary judgment on the ground of qualified immunity. *See Buonocore v. Harris*, 65 F.3d 347, 359-60 (4th Cir. 1995) (finding that when resolution of both the qualified immunity question and the case itself depend upon determining what happened, summary judgment on qualified immunity grounds is not proper).

[5] Joyner also sues the defendants in their official capacities. However, neither a state nor its officers acting in their official capacities are "persons" under § 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70-71 (1989). Therefore, I will grant summary judgment for all of the defendants on Joyner's claims against them in their official capacities.

-9-

punching Joyner in the head. Joyner alleges that Sattlefield and Coleman observed this activity, but did nothing to prevent Byington from assaulting him.

Joyner has presented genuine issues of material fact that remain in dispute: whether Sattlefield and Coleman witnessed any of Byington's alleged use of excessive force against Joyner and whether they had a reasonable opportunity to intervene or prevent it. Therefore, I will deny summary judgment on Joyner's claim of bystander liability against Sattlefield and Coleman in their individual capacities.

D. Retaliation.

To state a § 1983 claim of retaliation, an inmate plaintiff must allege facts showing that the alleged retaliatory action either violated his constitutional right or "constitute[d] punishment for [his] exercise of a constitutional right." *Cochran v. Morris*, 73 F.3d 1310, 1318 (4th Cir. 1996) (citing *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994)). Furthermore, when alleging First Amendment violations, he must also state facts indicating that "the conduct complained of adversely affected his constitutional rights." *Daye v. Rubenstein*, 417 F. App'x 317, 319 (4th Cir. 2011) (unpublished) (citing *ACLU v. Wicomico Cty.*, 999 F.2d 780, 785 (4th Cir. 1993)). However, claims of retaliation by prison inmates are generally treated with skepticism because "every act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct."

*Cochran*, 73 F.3d at 1317. In addition, the fact that a defendant's conduct caused a mere inconvenience is not sufficient to satisfy this element. *Daye*, 417 F. App'x at 319.

Prisoners do not have a constitutional right of access to a grievance process. *Adams*, 40 F.3d at 75. Thus, Joyner's use of the prison complaint process was not a constitutionally protected activity, and as such, the officers' alleged actions in response to that activity cannot give rise to a § 1983 claim of retaliation. Moreover, I conclude that the deprivation of two meal trays is merely an inconvenience and not an adverse action geared to chill Joyner's constitutional exercise. I will therefore grant summary judgment for Byington and Sattlefield as to Joyner's retaliation claim.

### E. Medical Care.

An Eighth Amendment claim regarding medical care requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the defendant was deliberately indifferent to that need. *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008); *see also Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Estelle*, 429 U.S. at 106. A serious medical need in this context is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko*, 535 F.3d at 241. To prove deliberate indifference, the

plaintiff must state facts indicating that the defendant "actually [knew] of and disregard[ed] an objectively serious condition, medical need, or risk of harm." *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003). The "deliberate indifference standard is not satisfied by a showing of mere negligence, a mere error of judgment or inadvertent failure to provide medical care, or mere disagreement concerning questions of medical judgment." *Germain v. Shearin*, 531 F. App'x 392, 395 (4th Cir. 2013) (unpublished) (internal quotation marks and citations omitted).

Taking the evidence in the light most favorable to Joyner, I cannot find that he has stated facts on which he could persuade a jury that Nurse Holbrook knew of any serious medical need for treatment in the aftermath of the May 5 altercation. The undisputed video footage shows Holbrook listening to Joyner's complaints and providing medical assessments of his condition. Joyner faults the quality of her examination and disagrees with her conclusion that no immediate treatment was required for his bloody lip, the reddened spots on his mouth and forehead, and his reportedly sore wrist and numb fingers. He insists that she should have provided pain medication at a minimum. Such accusations of medical negligence and disagreements with medical judgments are simply not actionable under § 1983. *See Estelle*, 429 U.S. at 105-06 (finding that alleged "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner").

Moreover, Joyner has not presented any evidence on which he could persuade a fact finder that he exhibited any serious medical need for which immediate treatment was medically necessary at the time Holbrook examined him. The video footage corroborates Holbrook's observation that there was no active bleeding to be stopped. An X-ray later confirmed that there were no broken or displaced bones in his hand. If Joyner desired pain medication or an ice pack, he could file a request with the medical department.[6] Finding no material issues of disputed fact, I will grant Holbrook's Motion for Summary Judgment.

### III.

Based on the foregoing, it is hereby **ORDERED** as follows:

1. The plaintiff's motion regarding additional video footage related to the medical assessment of his injuries (ECF No. 50) is DENIED;

2. Defendant Holbrook's Motion for Summary Judgment (ECF No. 35) is GRANTED;

---

[6] At most, Holbrook's medical decisions delayed for only a few hours the medical care that Joyner now claims he needed after the alleged assault. Joyner has not presented evidence that this delay resulted in substantial aggravation or complication of his conditions. *See, e.g., Webb v. Hamidullah*, 281 F. App'x 159, 166 (4th Cir. 2008) (unpublished) (finding that an alleged intentional delay of medical care states a constitutional claim only if the plaintiff shows that the defendant's conduct resulted in substantial harm to him).

3. The remaining defendants' Motion for Summary Judgment (ECF No. 42) is DENIED IN PART AND GRANTED IN PART; the motion is DENIED as to Joyner's claims of excessive force against defendants Byington and Kirby in their individual capacities; the motion is DENIED as to Joyner's claims of bystander liability against defendants Sattlefield and Coleman in their individual capacities; but the motion is GRANTED as to all other claims against these defendants; and

4. The clerk SHALL schedule this case for a jury trial in Abingdon on the claims of excessive force and bystander liability against defendants Byington, Kirby, Sattlefield, and Coleman, with the plaintiff to participate by video conferencing from the Illinois prison where he is now confined.

ENTER: November 30, 2016

/s/ James P. Jones
United States District Judge